UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

CANTOR FITZGERALD & CO.,

        Plaintiff,

v.

ALIMERA SCIENCES, INC.,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Civil Action No._____

**COMPLAINT**

Plaintiff Cantor Fitzgerald & Co. ("Plaintiff" or "CF&CO"), by and through its attorneys, as and for its Complaint against Alimera Sciences, Inc. ("Defendant" or the "Company"), alleges as follows:

### THE NATURE OF THE ACTION

1. This action arises from Defendant's breach of its contractual obligation to pay an advisory fee and related expenses totaling $924,890.00 pursuant to a written contract between the parties.

2. Plaintiff is a pre-eminent capital markets investment bank.

3. Defendant is a pharmaceutical company that specializes in the research, development, and commercialization of prescription ophthalmic pharmaceuticals.

4. On or about March 15, 2016, the parties entered into a letter agreement by which the Company engaged CF&CO to assist the Company in raising capital, by, among other things, obtaining bank or loan financing, or issuing notes for the purpose of retiring existing debt and for other working capital purposes (the "Letter Agreement"). A true and correct copy of the Letter Agreement is attached as Exhibit A.

5. On or about April 29, 2016, the parties entered into an amendment to the Letter Agreement (the "Amendment," and together with the Letter Agreement, the "Amended Agreement"). A true and correct copy of the Amendment is attached as Exhibit B.

6. The Amended Agreement provides that CF&CO is entitled to receive a cash fee if the Company closes a bank or loan financing or amends, extends, restates or otherwise modifies its existing senior indebtedness (a "Bank Financing") prior to the date which is 12 months after the date of the Letter Agreement equal to 2% of the principal amount of such Bank Financing. *See* Exhibit A at 4 (Section 6) and at 2 (Section 3); and *See* Exhibit B at 1 (Section 2).

7. On October 20, 2016, the Company publicly announced that it had amended and extended its existing $35 million senior indebtedness and simultaneously closed on an additional new $10 million loan facility, which combined constitutes a $45 million principal amount of Bank Financing under the Amended Agreement. A true and correct copy of the Company's October 20, 2016 press release is attached as Exhibit C.

8. On October 21, 2016, CF&CO sent a letter to the Company requesting payment of the $900,000 fee owed to it under the Amended Agreement (2% of $45 million) as well as reimbursement of expenses in the amount of $24,890.00 to which CF&CO is entitled under the Amended Agreement. A true and correct copy of CF&CO's demand letter to the Company dated October 21, 2016 is attached as Exhibit D.

9. To date, Defendant has not paid any of the amounts owing to Plaintiff under the Amended Agreement.

10. Continued failure to pay these amounts constitutes a breach by Defendant of its obligations under the Amended Agreement preventing Plaintiff from receiving the benefit of its bargain.

11. As a result, Plaintiff brings this action against Defendant alleging claims for breach of contract, breach of covenant of good faith and fair dealing, and indemnification.

## JURISDICTION AND VENUE

12. Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction because the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000.

13. In the Amended Agreement, the parties agreed that any suit, action, or other proceeding arising out of the Amended Agreement, or any of the agreements or transactions contemplated thereby, may be heard and determined in the United States District Court for the Southern District of New York. *See* Exhibit A at vi (Section O).

14. The Amended Agreement provides that it will be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to the conflicts of laws provisions thereof. *See* Exhibit A at 4 (Section 9).

## THE PARTIES

15. Plaintiff is a New York partnership with its principal place of business at 110 East 59th Street, New York, NY 10022.

16. Defendant is a Delaware corporation with its principal place of business at 6120 Windward Parkway, Suite 290, Alpharetta, GA 30005.

## FACTUAL ALLEGATIONS

17. Plaintiff is a pre-eminent capital markets investment bank.

18. Defendant is a pharmaceutical company that specializes in the research, development, and commercialization of prescription ophthalmic pharmaceuticals.

19. On March 15, 2016, Plaintiff and Defendant entered into the Letter Agreement. *See* Exhibit A.

20. The Letter Agreement provides that Plaintiff is entitled to a cash fee equal to 2% of the principal amount of Bank Financing obtained by the Company within 12 months of the date of the Letter Agreement.

21. On April 29, 2016, Plaintiff and Defendant entered into the Amendment to the Letter Agreement. *See* Exhibit B.

22. The sole purpose of the Amendment was to clarify that amending, extending, restating or otherwise modifying the Company's existing senior indebtedness with Hercules Capital Inc. ("Hercules") constituted a Transaction for which CF&CO would be entitled to a fee as provided in the Letter Agreement. Specifically, the Amendment provides in relevant part:

> The engagement of CF&CO hereunder does include, and CF&CO shall receive fees with respect to, any Notes Offering and any Bank Financing that includes, in whole or in part, the holder of the Company's existing senior indebtedness, including, without limitations, by way of (a) amending, extending, restating or otherwise modifying the existing senior indebtedness or (b) such holder rolling over or exchanging the existing senior indebtedness into any Bank Financing or Notes Offering . . .

Exhibit B at 1 (Section 2).

23. As set forth in the Amendment, the one exception to CF&CO earning a fee for refinancing current senior indebtedness was only in the event of emergent rescue refinancing to avoid imminent breach of covenants under existing financing agreements:

4

> The engagement of CF&CO hereunder does not include, and CF&CO shall not receive any fees with respect to, any waiver or consent from such holder of the Company's existing senior indebtedness or any amendment to the existing senior debt documents, in each case, solely to address any breach or threatened breach by the Company of the financial covenants contained in such debt documents.

Exhibit B at 1 (Section 2).

24. Pursuant to the Letter Agreement, CF&CO expended substantial resources and effort to assist the Company in raising capital.

25. In April 2016, Plaintiff began a debt financing marketing process for Defendant. Among other things, Plaintiff contacted 30 potential lenders, and Plaintiff distributed 22 process Non-Disclosure Agreements ("NDAs") which culminated in 16 signed and fully executed NDAs. Based on CF&CO's efforts, 14 potential lenders were granted access to Defendant's data room and Plaintiff hosted 12 phone calls between management and potential lenders. Two term sheets were submitted by potential lenders following the marketing process.

26. General feedback during the debt financing marketing process included poor physician acceptance of Defendant's marketed product, Illuvien, versus competing products, the overall challenges surrounding the use of steroids in the eye, as well as Defendant consistently falling short of financial guidance.

27. On June 3, 2016, Defendant entered into an exclusive agreement with a potential lender, which is a major debt fund manager reported to have over $8 billion in assets under management (the "Potential Lender"). The exclusivity expiration date was July 15, 2016. Plaintiff introduced the Potential Lender to Defendant.

28. Between entering into the aforementioned exclusive agreement with the Potential Lender, on June 3, 2016 and the expiration of the exclusivity agreement on July 15, 2016, Defendant updated its financial guidance during lender due diligence by disclosing

financial information that was materially below previously issued financial guidance. As a result, the Potential Lender was unable to seek credit approval for the facility. Plaintiff, on Defendant's behalf, requested that Potential Lender submit a proposal which could potentially be recommended to the lender's credit committee. The subsequent proposal by the Potential Lender was not acceptable to Defendant.

29. At no time did Defendant notify Plaintiff that it was pursuing a refinancing with Hercules, or that it was facing imminent breach of any covenant under existing financing agreements. To the contrary, Defendant was not in financial distress at any relevant time, and in August 2016, Defendant completed an equity raise of $26 million through a public offering of common stock.

30. On September 28, 2016, Plaintiff received via email a letter from the Vice President, General Counsel of Defendant stating that, despite the express terms of the Amendment, the sole purpose of which was to clarify the parties agreement that a transaction with Hercules would entitle Plaintiff to the compensation it bargained for in the Amended Agreement: "We do not believe that [CF&CO receiving the fee it expressly bargained for] meets the spirit of the Engagement Letter because Cantor Fitzgerald has opted not to engage with the Company on this matter."

31. On September 28, 2016, Plaintiff sent to Defendant a letter in response stating that "[t]he terms of the Engagement Letter are unambiguous and a fee equal to 2% of the principal amount of the Bank Financing will be owed to us as a result of the Bank Financing. We intend to vigorously pursue any and all remedies available to us to obtain such fee."

32. On October 20, 2016, Defendant publicly announced it had amended its existing $35 million senior credit facility with Hercules and closed on an additional $10 million

loan facility with Hercules. *See* Exhibit C. This Bank Financing closed within the Outside Date set forth in the Letter Agreement.

33. On October 21, 2016, Plaintiff sent a letter to Defendant requesting payment of the $900,000 fee owed to it under the Amended Agreement (2% of $45 million) as well as reimbursement of expenses in the amount of $24,890.00 to which Plaintiff is entitled under the Amended Agreement. *See* Exhibit D.

34. On October 25, 2016, James Burnes, Managing Director, Healthcare Investment Banking at Plaintiff received a phone call from Rick Eiswirth, Chief Financial Officer, of Defendant during which Mr. Eiswirth acknowledged that Plaintiff is entitled to the fee it claims is due as a result of the Hercules transaction.

35. Nevertheless, to date, Defendant has not paid any of the amounts owed to Plaintiff under the Amended Agreement.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract)

36. Plaintiff repeats and realleges paragraphs 1 through 35 above with the same force and effect as if fully set forth herein.

37. Plaintiff and Defendant entered into the valid and binding Amended Agreement.

38. Plaintiff has performed all of its obligations under the Amended Agreement, except as excused or prevented by Defendant.

39. Defendant has materially breached the Amended Agreement by, among other things: (1) failing to pay Plaintiff the $900,000 fee owed to it by reason of the Hercules transaction; and (2) failing to reimburse Plaintiff's expenses in the amount of $24,890.

40. As a result of Defendant's breach of the Amended Agreement, Plaintiff has been damaged, which damages are the natural and proximate consequence of Defendant's breach of the Amended Agreement, in an amount to be determined at trial, but no less than $924,890.00.

## SECOND CLAIM FOR RELIEF
### (Breach of the Covenant of Good Faith and Fair Dealing)

41. Plaintiff repeats and realleges paragraphs 1 through 40 above with the same force and effect as if fully set forth herein.

42. Defendant agreed to abide by the terms of the Amended Agreement. Implied in this contractual relationship was Defendant's covenant of good faith and fair dealing, which does not run contrary to any provision of the Amended Agreement.

43. Defendant's actions as set forth above breached this implied covenant of good faith and fair dealing.

44. Defendant has failed to fulfil its contractual obligations of paying the cash fee and reimbursing expenses thereby depriving Plaintiff of its right to receive the benefits bargained for under the Amended Agreement.

45. Defendant's breaches are causing substantial and imminent harm and damage to Plaintiff.

46. Defendant's relevant conduct is purposeful, willful, and egregious, warranting the imposition of punitive damages under New York law.

47. As a result of Defendant's material breaches of the covenant of good faith and fair dealing, Plaintiff has suffered significant damage, in an amount to be determined at trial, but no less than $924,890.00 .

## THIRD CLAIM FOR RELIEF
### (Indemnification for Legal Fees and Related Costs)

48.   Plaintiff repeats and realleges paragraphs 1 through 47 above with the same force and effect as if fully set forth herein.

49.   Pursuant to Section 7 of the Amended Agreement and the Indemnification Provisions incorporated therein by reference and attached thereto, Defendant agreed to indemnify and hold harmless Plaintiff from and against any and all losses, claims, damages, obligations, penalties, judgments, awards and other liabilities and to fully reimburse Plaintiff for any and all reasonable fees, costs, expenses and disbursements, as and when incurred, of investigating, preparing or defending any claim, action, suit, proceeding or investigation (including any and all legal expenses) arising out of the Amended Agreement, the transactions contemplated thereby, or Plaintiff's actions or inactions in connection with therewith.

50.   Defendant has breached the Amended Agreement, causing Plaintiff to suffer the damages for which Defendant owes it indemnity.

51.   Defendant is therefore liable to Plaintiff for all of Plaintiff's legal fees and related costs, and all other costs, fees and expenses that Plaintiff has incurred, is incurring and/or will incur in connection with Defendant's failure to observe and perform its obligations under the Amended Agreement.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Cantor Fitzgerald & Co. respectfully requests that the Court enter a judgment:

    a.    Awarding compensatory and punitive damages in an amount to be determined at trial;

    b.    Awarding the full costs of this action, including attorney's fees, as well as costs and disbursements incurred by Plaintiff as required by the indemnification clause in the Amended Agreement; and

    c.    Granting such other and further relief that the Court deems just and proper.

Dated: November 16, 2016  
       New York, New York

Respectfully submitted,

CANTOR FITZGERALD & CO.

By: _____  
Michael S. Popok, Deputy General Counsel  
(MP 7691)  
David A. Paul, Assistant General Counsel  
(DP 7629)  
110 East 59th Street, 7th Floor  
New York, New York 10022  
(212) 610-2298  
   *Attorneys for Plaintiff*